IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY A. MCKINNEY,

                Plaintiff,                              Civ. No. 6:15-CV-00299-PA

vs.                                                  **ORDER**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

---

PANNER, District Judge.

        Jeffrey A. McKinney ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") finding him not disabled under Title XVI of the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for payment of benefits.

## BACKGROUND

        Born in March 1984, Plaintiff was 26 years old on the alleged onset date of April 4, 2011. Tr. 153. Plaintiff speaks English and has completed school through the tenth grade with some additional GED classes. Tr. 38-39, 169, 171. In April 2011, Plaintiff applied for Supplemental Security Income. Tr. 153-60. His application was denied initially on July 13, 2011, and upon reconsideration on June 5, 2012. Tr. 69-79, 82-93. Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). Tr. 113-15. After an administrative hearing held

on July 31, 2013, ALJ Ted Neiswanger issued a decision finding Plaintiff not disabled. Tr. 16-27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final Agency decision. Tr. 8-10; 20 C.F.R. § 422.210.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(l)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, he or she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 21, 2011. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar II disorder,

Page 3 - ORDER

panic disorder with agoraphobia, obsessive-compulsive disorder, and learning disorder. Tr. 18-19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19-20.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the ability to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant can perform one to two step work tasks frequently and tasks that are more complex occasionally. The claimant can have less than occasional face-to-face superficial interaction with the public, and occasional, superficial interaction with the public by telephone or not face-to-face. The claimant can have structured superficial interactions with coworkers. The claimant can perform no work in a setting with large numbers of people (more than 10) in the room or immediate vicinity.

Tr. 20-25.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 25. At step five, based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 26. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 26-27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to: (1) explain the inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), (2) provide a legally sufficient reason to reject the medical opinion of Dr. Steve Pethick, (3) provide a clear and convincing reason for discrediting his symptom testimony, and (4) provide a germane reason to reject the testimony of the lay witnesses. Pl.'s Br. 1-2, 4-17.

The Commissioner concedes that reversal of the ALJ's decision is warranted. Def.'s First Am. Br. 4. Specifically, the Commissioner acknowledges that the ALJ erred at step five by not addressing the apparent conflict between the testimony of the VE and the DOT with respect to Plaintiff's ability to perform jobs requiring level two reasoning. *Id.* Thus, the sole issue on

review is whether this case should be remanded for further proceedings or for the payment of benefits.

The decision "whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Generally, remand for the payment of benefits is proper "when no useful purpose would be served by further administrative proceedings . . . or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (citations omitted). However, remand for further proceedings is appropriate where outstanding issues remain unresolved. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, Plaintiff contends that remand for the immediate payment of benefits is proper because the statements of Plaintiff, Dr. Pethick, and the lay witnesses should be fully credited. Pl.'s Br. 17.[1] Conversely, the Commissioner asserts that remand for further proceedings is required because the ALJ reasonably assessed the statements of Plaintiff, Dr. Pethick, and the lay witnesses, such that the only unresolved issue is with respect to the VE's testimony. Def.'s First Am. Br. 4-5, 11-14.

Of the remaining three issues, the Court finds only two determinative of disability: Plaintiff's credibility and discrediting the lay witness testimony. Namely, the Court need not address whether the ALJ improperly rejected the medical opinion of Dr. Pethick because, even if

---

[1] In the alternative, Plaintiff requests the Court remand the case to allow Dr. Ryan Scott to clarify his 2007 findings. Plaintiff, however, does not argue that Dr. Scott's medical opinion from the adjudication period is ambiguous or insufficient. In fact, he does not rely on this evidence as the basis of his appeal. *See generally* Pl.'s Br. As such, Plaintiff failed to provide a reason for the inclusion of Dr. Scott's 2007 medical report. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance").

Page 6 - ORDER

credited as true, it is not clear based on this evidence that the ALJ would be required to find Plaintiff disabled. Dr. Pethick wrote that Plaintiff "clearly has the cognitive capacity to work in a variety of different job settings, but it is important that he first get a handle on his anxiety and in order to most successful [sic]." Tr. 253. Dr. Pethick also opined that Plaintiff would "need extra time to learn the details of any new job setting and will benefit from having a supportive 'coach' or co-worker in place to help with this process." *Id*. Dr. Pethick's report suggests Plaintiff has the ability to work and he does not articulate any concrete functional limitations. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (recommendations or suggestions from medical providers are not work-related limitations of function that need be reflected in the RFC).

Next, the ALJ erred to the extent he did not fully credit the testimony of Plaintiff. Plaintiff's subjective symptom statements, if credited, would establish his entitlement to benefits, such that this issue is dispositive. The ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible" because Plaintiff worked in the past, engaged in a wide range of activities including leaving his house, and failed to seek treatment. Tr. 21, 25.

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

The Court finds that the ALJ erred in evaluating Plaintiff's subjective symptom statements. Here, the ALJ found Plaintiff's past work history showed "the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." Tr. 21. However, Plaintiff's past work history cannot be considered when rejecting the severity of his symptom testimony. *See* SSR 16-3P at *10 (ALJ's evaluation of a claimant's symptom statements must not "assess an individual's overall character or truthfulness"). Further, although Plaintiff worked in the past it does not contradict his statements concerning his current mental limitations and evidence in the record illustrating Plaintiff's mental conditions worsened after his last employment ended in 2004.[2] As such, the ALJ erred in relying on Plaintiff's past work history to discredit his symptom testimony.

Additionally, the ALJ noted that "despite [his] reported self-isolation" Plaintiff engaged in a wide range of activities, specifically caring for two dogs and a cat, helping his mother on her farm, watching movies, playing video games, and communicating with people over the internet. Tr. 21. While the record shows Plaintiff did, in fact, engage in these activities, this evidence does not contradict Plaintiff's statement that he "get[s] very anxious" around big groups of people, "especially if they're not family or friends or immediate associates." Tr. 47; see also Tr. 50, 55-56 (Plaintiff testifying that he would get a ride with a family member to get to his mother's farm and that he did not engage in any additional in-person social activities, only communicating with

[2] Plaintiff worked as a landscaper, a waiter at a nursing home, and as a sorter at a recycling facility during 2001, 2002, and 2004, respectively. Tr. 21, 39-43, 171, 224. However, in a 2011 medical report Dr. Scott opined that since his prior examination of Plaintiff in 2007, Plaintiff "appears to be descending further into social isolation." Tr. 226. Additionally, Plaintiff testified to having numerous panic and anxiety attacks daily, which is supported by medical reports submitted by Dr. Karen Crocker-Wensel. *See, e.g.* Tr. 54, 238.

other people over the internet). Further, the Commissioner has not pointed to, and an independent review of the record does not reveal, any evidence that casts into doubt Plaintiff's social anxiety. *See* Def.'s First Am. Br. 10 (noting only Plaintiff's ability to help his mother on her farm, watch movies, and play video games).

Finally, the ALJ found Plaintiff's testimony was less credible due to "his lack of insight into his mental impairments and unwillingness to participate in treatment that might improve his ability to socialize and reduce his anxiety." Tr. 25. Unexplained or inadequately explained failure to seek, or follow, a prescribed course of treatment is a relevant factor in assessing a plaintiff's testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff was seen by Dr. Crocker-Wensel in 2011 and 2012 and was prescribed different medications to address his anxiety. Tr. 233-41. Although Plaintiff initially reported his anxiety was "less intense," he eventually had complications with his medications and his treatment was discontinued, per office policy, after two late cancellations. *Id.* The ALJ noted there was no evidence of further treatment after this time. Tr. 22. However, the ALJ erred by finding Plaintiff not credible due to his lack of continued treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (A claimant is not punished if his mental impairments prevent him from seeking services.) Indeed, an independent review of the record shows Plaintiff's anxiety prevented him from seeking medical services. *See, e.g.*, Tr. 206-17, 226 (Plaintiff's mother, Tammy McKinney, wrote that Plaintiff's anxiety prevents him from leaving his home and often caused him to miss doctor's appointments, and Plaintiff's aunt, Renee Hover, wrote that Plaintiff could not make doctor's appointments because "he has issues communicating his needs"). For these reasons, the Court finds the ALJ failed to provide a clear and convincing reason to reject Plaintiff's symptom testimony.

Finally, the ALJ failed to provide germane reasons to discredit the lay testimony of Plaintiff's lay witnesses. Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Tobeler v. Colvin*, 749 F.3d 830, 832-34 (9th Cir. 2014); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill* 12 F.3d at 919. If the ALJ disregards such testimony, the ALJ "must give reasons that are germane to each witness." *Id. See also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

Plaintiff's sister, Latisha Gillock, described Plaintiff's paranoia making him a "prisoner in his own house" and that he "has never managed money or went shopping on his own." Tr. 214-15. Plaintiff's aunt, Renee Hover, described Plaintiff "rarely goes out in public," except to do grocery shopping. Tr. 217. Plaintiff's grandmother, Ulla McKinney, and plaintiff's cousin, Carrie Hover, both wrote they hardly saw Plaintiff. Tr. 206, 209. Plaintiff's father, Lance McKinney, also described Plaintiff's paranoia and lack of social life. Tr. 212. Finally, Plaintiff's mother, Tammy McKinney, described Plaintiff's inability to "deal with criticism well," that his "communication skills are limited and [he] is very quick tempered," and that he will not go to restaurants because "people may be watching him." Tr. 207. She also stated "[s]ometimes I am unable to get him out to get groceries." *Id.*

The ALJ considered the lay testimony and found "the totality of the evidence does not support more restrictive limitations than is listed in the above residual functional capacity," specifically noting that Plaintiff "worked in the past despite his limitations," spent time at his mother's farm, and "enjoyed using the computer." Tr. 24. Lay witness testimony may be disregarded on the same basis as claimant's discredited subjective reports. *See Valentine*, 574 F.3d at 694. However, in light of the Court's conclusion that the ALJ failed to provide clear and

Page 10 - ORDER

convincing reasons for rejecting Plaintiff's own subjective complaints, and given the ALJ's reasons for rejecting the lay witness complaints are identical to those cited to discredit Plaintiff's testimony, it follows that the ALJ failed to give germane reasons to reject the testimony of Plaintiff's lay witnesses.

Because the ALJ erred in regard to Plaintiff's testimony, the lay witness testimony, and at step five, the next step is to review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted). During its review the "district court must consider whether there are inconsistencies between [the claimant's] testimony and the medical evidence in the record," or whether evidence exists that "casts into serious doubt the claimant's claim to be disabled." *Id.* The court may not remand for an award of benefits unless it concludes that "further administrative proceedings would serve no useful purpose." *Id.*

Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407. The court must evaluate the testimony the ALJ improperly rejected, "in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the

claimant were disabled if that testimony or opinion were deemed true." *Id.* If so, the Court "may exercise its discretion to remand the case for an award of benefits." *Id.*

The Court finds there are no ambiguities in the record. In 2011, Dr. Scott noted that Plaintiff's social isolation was getting worse. Tr. 226. Additionally, in 2011 Dr. Crocker-Wensel opined that Plaintiff was having three to six panic attacks per day and continuing to have problems with his sleeping. Tr. 238. In 2013 lay witnesses described Plaintiff's anxiety attacks and reclusive behavior which prevented him from leaving his home. Tr. 206-17. This evidence is consistent with Plaintiff's hearing testimony- i.e. that he has social anxiety around big groups of people, can only force himself to shop once a month with help, and will have three to ten panic or anxiety attacks per day depending on triggers. Tr. 45-46, 53-54.[3] Further, the Commissioner has not pointed to, and an independent review of the record does not reveal, any evidence that casts into doubt the debilitating extent of Plaintiff's mental limitations. See Def.'s First Am. Br. 9-10 (noting only Plaintiff's past work, activities, and failure to seek medical treatment).

The final question the Court must address is whether the ALJ is required to find Plaintiff disabled if his testimony and the lay witness testimony concerning the severity of his mental limitations is credited as true. If Plaintiff's testimony and the lay witness testimony were credited as true, the ALJ would be required to find him disabled. During the administrative hearing, the VE testified that an individual who has panic or anxiety attacks every time he received criticism

---

[3] Although Dr. Pethick opined in 2005 and 2006 that Plaintiff would be able to work once his anxiety was controlled, the Court disregards this report because his opinion was made prior to Plaintiff's alleged disability onset date of April 4, 2011. Tr. 246-53. *See Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance"). Additionally, Dr. Pethick's determination that Plaintiff was able to work was dependent on Plaintiff's ability to control his anxiety, which the record shows has not occurred. *See, e.g.* Tr. 223-27, 236-41 (medical reports from Dr. Scott and Dr. Crocker-Wensel that describe Plaintiff's continued anxiety). Therefore, the Court disregards any ambiguities in the record created by Dr. Pethick's report concerning Plaintiff's ability to work.

Page 12 - ORDER

would not be tolerated by employers. Tr. 65-66. Specifically, the VE testified: "that would likely jeopardize employment, especially if we're talking several times a week if this is a regular ongoing basis." Tr. 66. Therefore, this case is remanded for the immediate payment of benefits.

## CONCLUSION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner is REVERSED and REMANDED for payment of benefits.

IT IS SO ORDERED.

DATED this ___12___ day of September, 2016.

OWEN M. PANNER
United States District Judge